IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDSAY AMMIRANTE, AUTUMN TROULLOS
and RACHEL MILLER,

      Plaintiffs,

v.                             Civil Action No. 5:19CV12
                                               (STAMP)

OHIO COUNTY BOARD OF EDUCATION,
JOE KOLB, Principal, in his
individual and official capacities,
KIMBERLY S. MILLER, Superintendent,
in her individual and official capacities
and RICK JONES, Assistant Superintendent,
individually and in his official capacity,

      Defendants.


**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT MILLER AND JONES'
MOTION FOR JUDGMENT ON THE PLEADINGS,
GRANTING DEFENDANT OHIO COUNTY BOARD OF EDUCATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS AND
DENYING JOINT MOTION FOR EXTENSION OF TIME
TO FILE EXPERT WITNESS INFORMATION AS MOOT**


I.  <u>Background</u>

The plaintiffs, Lindsay Ammirante ("Ammirante"), Autumn Troullos ("Troullos"), and Rachel Miller ("Miller"), filed a complaint in the Circuit Court of Ohio County, West Virginia. ECF No. 1-1. The defendants, the Ohio County Board of Education ("OCBOE"), Kimberly S. Miller ("Miller"), and Rick Jones ("Jones"), removed this civil action to the United States District Court for the Northern District of West Virginia on February 1, 2019. ECF No. 1. The complaint alleges that the defendants were deliberately indifferent in responding to a "sexual predator," defendant Joe

Kolb ("Kolb"), vice principal or principal at Bridge Street Middle School, on school premises. ECF No. 1-1 at 1-5. The plaintiffs, female teachers working in that school, contend that such conduct denied them access to educational activities and employment. Id. Specifically, the plaintiffs state that one teacher had to take a leave of absence, another transferred to a different school, and one is actively seeking employment elsewhere. Id. at 5. The plaintiffs contend that: (1) defendants OCBOE, Miller, and Jones were negligent (Counts I and II); (2) defendants OCBOE, Miller, and Jones conspired to commit plaintiffs' alleged violations (Count III); (3) defendant Kolb intentionally inflicted mental, physical, and emotional distress upon plaintiffs (Count IV); (4) defendant OCBOE violated Title IX (Counts V and VI); (5) defendants OCBOE, Kolb, Miller, and Jones violated 42 U.S.C. § 1983 (Counts VII and VIII); and (6) defendants OCBOE, Kolb, Miller, and Jones violated the West Virginia Human Rights Act ("WVHRA") (Count IX). Id. at 5-26. The plaintiffs seek compensatory and punitive damages. Id. at 26-27. The plaintiffs also seek injunctive relief requiring defendant OCBOE to: (1) take effective steps to prevent sex-based discrimination and harassment in its education programs; (2) fully investigate conduct that may constitute sex-based harassment; (3) appropriately respond to all conduct that may constitute sex-based harassment; and (4) mitigate the effects of harassment. Id. at 27.

Lastly, the plaintiffs seek statutory interest, costs, and reasonable attorneys' fees.  Id. at 27.

Defendant Kolb filed a motion to dismiss the plaintiffs' complaint, under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 6.  After full briefing, this Court entered a memorandum opinion and order granting defendant Kolb's motion to dismiss.  ECF No. 33.  The remaining defendants in this action are defendants OCBOE, Miller, and Jones.  In the memorandum opinion and order as to defendant Kolb, this Court first found that the plaintiffs failed to sufficiently plead their claims against defendant Kolb pursuant to § 1983 based on a hostile or abusive work environment, or retaliation.  Id. at 9-23.  Second, this Court found that the plaintiffs failed to sufficiently plead their claims against defendant Kolb based on the WVHRA.  Id. at 24-26.  Third, this Court held that the plaintiffs failed to sufficiently plead their claims against defendant Kolb for intentional infliction of emotional distress.  Id. at 26-28.

On July 29, 2019, defendants Miller and Jones filed a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  ECF No. 35.  In their memorandum in support of their motion, defendants Miller and Jones state that because this Court determined that the plaintiffs' claims against defendant Kolb must be dismissed, the same claims against them, specifically Counts VII and VIII, should be dismissed.  ECF No. 36 at 3.

Moreover, defendants Miller and Jones assert that the remaining claims (Counts I, II, and III) should be dismissed since the Court found that the plaintiffs failed to sufficiently plead any claims against defendant Kolb. Id. at 6. Specifically, defendants Miller and Jones contend that since there is no underlying injury, they cannot be held liable for negligent supervision, training or investigation of that harassment (Counts I and II). Id. Similarly, defendants Miller and Jones state that since there is no underlying tort, there can be no civil conspiracy; therefore, Count III should be dismissed. Id. at 6-7. Further, defendants Miller and Jones state that Counts I, II, and III should be dismissed since they are immune from liability based on the Governmental Tort Claims and Insurance Reform Act. Id. at 7-10. Lastly, defendants Miller and Jones state that they are immune from liability for all remaining causes of action since they are entitled to qualified immunity. Id. at 10-11.

On July 29, 2019, defendant OCBOE also filed a motion for judgment on the pleadings. ECF No. 37. In its memorandum in support of its motion, defendant OCBOE stated that since this Court already determined that the plaintiffs' allegations are insufficient to sustain a claim for sexual harassment or retaliation against defendant Kolb, the plaintiffs' claims must be dismissed. ECF No. 38 at 2-4. With respect to the plaintiffs' claims under Title IX, more specifically Counts V and VI, defendant

OCBOE asserts that since the plaintiffs' claims fail under Title VII and the WVHRA, their claims also fail under Title IX due to their failure to plead the necessary elements of a sexual harassment or retaliation claim. Id. at 4-6. Moreover, defendant OCBOE states that the plaintiffs' claims for common law negligence must be dismissed because they are duplicative of the plaintiffs' other sexual harassment claims and are thus preempted by statute. Id. at 6-7. Defendant OCBOE asserts that even if the claims are not preempted, in light of this Court's determination that defendant Kolb's actions as alleged in the complaint did not constitute sexual harassment, it is entitled to immunity under the West Virginia Governmental Tort Claims Act. Id. at 8. Also, defendant OCBOE asserts that because the OCBOE did not breach any duty owed to them, it cannot be held liable for negligence. Id. at 8-9. Lastly, defendant OCBOE contends that the plaintiffs' claims for conspiracy should be dismissed, because the Court has not found an underlying tort supporting that claim. Id. at 9-10.

The plaintiffs then filed a response in opposition to the motions for judgment on the pleadings of defendant OCBOE, and defendants Miller and Jones. ECF No. 40. In their response, the plaintiffs first state that the Court should deny defendant OCBOE's motion to dismiss as to Counts I, II, and V because defendant OCBOE was negligent and deliberately indifferent to the plaintiffs' report of sexual harassment. Id. at 8-16. The plaintiffs concede

that since defendant Kolb's actions as alleged in the complaint were determined by this Court not sufficiently severe or pervasive, judgment on the pleadings is warranted for the plaintiffs' claims for conspiracy, intentional infliction of emotional distress, Title IX-Retaliation, § 1983, and violations of the WVHRA.  Id. at 16.  The plaintiffs also indicate that they have no objection to dismissal of defendants Miller and Jones as individual defendants. Id. at 16-17.

Defendant OCBOE then filed a reply.  ECF No. 41.  In its reply, defendant OCBOE contends that since the Court found that the plaintiffs have not sufficiently alleged the underlying claims, the Court must find that the claims against it must be dismissed, citing Klemencic v. Ohio State Univ., 263 F.3d 504, 511 (6th Cir. 2001), and Webber v. Mefford, 43 F.3d 1340 (10th Cir. 1994).  Id. at 2-4.  Moreover, defendant OCBOE states that the plaintiffs have not presented any reason why the Court should revisit its rulings regarding defendant Kolb's alleged actions.  Id. at 5.

Defendants Miller and Jones also filed a reply.  ECF No. 42. In their reply, the defendants indicate that the plaintiffs do not object to their dismissal as individual defendants, referencing the plaintiffs' memorandum in opposition to the motion to dismiss of defendants Miller and Jones.  Id. at 1.

## II.  Applicable Law

A motion for judgment on the pleadings is permitted under Federal Rule of Civil Procedure 12(c). Such a motion is intended as an avenue by which parties may dispose of a case on the basis of the underlying substantive merit of the parties' claims as they are revealed in the formal pleadings "after pleadings are closed, but early enough not to delay trial." Fed. R. Civ. P. 12(c); 5C Wright & Miller, Federal Practice and Procedure Civil 3d § 1367 (2007). When considering a motion for judgment on the pleadings pursuant to Rule 12(c), a court should apply the same standard as when considering a motion to dismiss pursuant to Rule 12(b)(6). See Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d I401, 405-06 (4th Cir. 2002).

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v.

<u>Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the non-moving party and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). <u>Id.</u> § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 (4th Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Nemet Chevrolet</u>, 591 F.3d at 256 (quoting <u>Iqbal</u>, 556 U.S. at 678). Detailed factual

allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## IV. Discussion

A. Counts III, IV, VI, VII, VIII, and IX of the plaintiffs' complaint are dismissed as to all defendants, including defendant OCBOE, based on the plaintiffs' concession. All counts of the plaintiffs' complaint are dismissed as they relate to defendants Miller and Jones as individual defendants based on the plaintiffs' concession.

The plaintiffs concede that given the Court's ruling in its memorandum opinion and order granting defendant Kolb's motion to dismiss (ECF No. 33), judgment on the pleadings is warranted for the plaintiffs' claims for conspiracy (Count III), intentional infliction of emotional distress (Count IV), Title IX-Retaliation (Counts VI), § 1983 liability (Counts VII and VIII), and violations of the WVHRA (Count IX).[1] ECF No. 40 at 16.

---

[1]This Court notes that in the plaintiffs' memorandum in opposition to the defendants' motions for judgment on the pleadings, the plaintiffs state that they "concede that judgment on the pleadings is warranted for the Plaintiffs' claims for Conspiracy (Count III), Intentional Infliction of Emotional Distress (Count IV), Title IX-Retaliation (Count IV), 1983 liability (Counts VII and VIII) and violations of the West Virginia Human Rights Act (Count IX)." ECF No. 40 at 16 (emphasis added). The plaintiffs seem to reference the incorrect count number for Title IX-Retaliation. After review of the plaintiffs' response in opposition to the defendants' motion for judgment on the pleadings and the plaintiffs' complaint, this Court finds that the plaintiffs seem to concede only one Title IX claim, specifically Count VI, against defendant OCBOE.

This Court further notes that the plaintiffs seem to concede the claims listed above while preserving their objections to this Court's memorandum opinion and order granting defendant Kolb's

Accordingly, this Court dismisses Counts III, IV, VI, VII, VIII, and IX of the plaintiffs' complaint as to all defendants, including defendant OCBOE.

Moreover, the plaintiffs state that they have no objection to dismissal of defendants Miller and Jones as individual parties. ECF No. 40 at 17.

Accordingly, this Court dismisses all counts of the plaintiffs' complaint as they relate to defendants Miller and Jones.[2]

B. Counts I, II, and V are dismissed as to defendant OCBOE.

Count I of the plaintiffs' complaint is a claim for negligence. ECF No. 1-2 at 16. Count II of the plaintiffs' complaint is a claim for negligent supervision. Id. Count V is a claim for deliberate indifference to sexual harassment, in

---

motion to dismiss (ECF No. 33).

[2]The plaintiffs state "[g]iven the Court's rulings in Docket 33, Defendant OCBOE's admission that Jones and Miller were acting within the scope of their duties, and Defendant Jones and Miller's admissions that Defendant Jones and Miller's failure and negligence were performed within the scope of their duties, there is no objection to dismissal of Defendant Jones and Miller as individual parties." ECF No. 40 at 16-17. This Court construes this statement to mean that the plaintiffs do not object to the dismissal of defendant Jones and Miller as individual parties in both their individual and official capacities. However, this Court notes that the plaintiffs seem to preserve any objections regarding this Court's previous memorandum opinion and order granting defendant Kolb's motion to dismiss (ECF No. 33).

violation of Title IX.  Id. at 18.  The Court addresses each count, as each count applies to defendant OCBOE, in turn.[3]

1.  Counts I and II are dismissed as to defendant OCBOE.

In the plaintiffs' first cause of action, the plaintiffs assert that defendant OCBOE negligently breached certain duties, which directly and proximately resulted in the plaintiffs' injuries and damages as alleged in their complaint.  ECF No. 1-2 at 16. Specifically, the plaintiffs state that the defendants owed the plaintiffs a duty to: (1) supervise and train defendant Kolb; (2) investigate allegations of sex-based harassment; (3) comply with the statutory mandate of federal law, including but not limited to Title IX; (4) protect the plaintiffs from retaliation; (5) report the results of investigations to the plaintiffs; and (6) provide a harassment free workplace.  Id.  Moreover, the plaintiffs state that as an employee of defendant OCBOE, defendant Kolb's acts and omissions are attributable to it.  Id.; see also ECF No. 40 at 13-14.  The plaintiffs state that the "critical question is not whether the Court found that the allegations in the Complaint were not severe or pervasive, the critical question is whether Defendant OCBOE was negligent in its responses and repeated failures to investigate and take action and whether Defendant OCBOE was

_____

[3]Although the plaintiffs' first and second causes of action assert claims against defendants OCBOE, Miller, and Jones, since this Court has dismissed Miller and Jones as individual defendants, the Court will analyze the plaintiffs' causes of action as they relate to defendant OCBOE.

deliberately indifferent to the Plaintiffs' claims." ECF No. 40
at 14.

In the plaintiffs' second cause of action, the plaintiffs
contend that defendant OCBOE negligently supervised defendant Kolb
and other employees by failing to provide proper training and
outline proper procedures for, among other things, investigation of
sex-based harassment complaints, corrective action for sex-based
harassment complaints, and protection of victims from retaliation.
ECF No. 1-2 at 17.

Conversely, defendant OCBOE asserts that if there is no
underlying constitutional violation, there can be no claim against
an educational institution for failure to investigate, train or
supervise related to that claim. ECF No. 41 at 2. Specifically,
defendant OCBOE maintains that the negligence claim is "entirely
based on the Board's obligations under Section 1983, Title VII, and
Title IX." Id. at 4.

The West Virginia Supreme Court of Appeals "has not found
state authority for a stand-alone claim for negligent training or
supervision." Webb v. Raleigh Cnty. Sheriff's Dep't, 761 F. Supp.
2d 378, 397 (S.D. W. Va. 2010); Taylor v. Cabell Huntington Hosp.,
Inc., 208 W. Va. 128, 538 S.E.2d 719, 725 (2000). "Instead, a
claim for negligent supervision requires a separate finding of
negligence on the part of the employee being supervised." Heslep
v. American for African Adoption, Inc., 890 F. Supp. 2d 671, 687

(N.D. W. Va. 2012); <u>see also</u> <u>Taylor</u>, 538 S.E.2d at 725 (dismissing the appellant's claim that a hospital negligently supervised a nurse absent a showing of negligence by the nurse); <u>Biser v. Manufacturers and Traders Trust Company</u>, 211 F. Supp. 3d 845 (S.D. W. Va. 2016) ("Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised.").

Here, the plaintiffs allege that defendant OCBOE's failure to supervise defendants Miller and Jones' allegedly negligent conduct resulted in its commission of negligence. Specifically, the plaintiffs allege in their complaint that defendants Miller and Jones failed to properly train and supervise defendant Kolb. <u>See</u> ECF No. 1-2 at 1-2; ECF No. 40 at 13. Based on the law outlined above, in order for defendant OCBOE to be held liable for negligent supervision or training, there must be a finding of negligence on the part of defendants Miller and Jones. However, in order to find defendants Miller and Jones liable, there must be a finding that defendant Kolb was negligent.

This Court notes that the plaintiffs are correct in stating that "[n]o where did the Court state that Kolb did not act negligently." ECF No. 40 at 16. However, the plaintiffs did not specifically plead in their complaint a claim against defendant Kolb for negligence. Moreover, the plaintiffs have voluntarily

dismissed defendants Miller and Jones.  Specifically, the acts alleged in the complaint are defendant Kolb's continued harassment, retaliation, and creation of a hostile work environment, and defendants Miller and Jones' alleged failure to properly train and supervise defendant Kolb.

Further, "a mere allegation of negligence does not turn an intentional tort into negligent conduct." Weigle v. Pifer, 139 F. Supp. 3d 760, 780 (S.D. W. Va. 2015) (finding that the defendant officers intended the consequences of their actions during plaintiff's arrest and that while their actions may give rise to an intentional tort, they cannot support liability predicated on negligence).  "Intentional torts, as distinguished from negligent or reckless torts . . . generally require that the actor intend the consequences of an act, not simply the act itself." Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (emphasis omitted) (internal quotation marks omitted).

Assuming the allegations in the plaintiffs' complaint are true, it seems that defendant Kolb's alleged conduct was intentional, specifically, his alleged continued harassment, retaliation, and creation of a hostile work environment. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 743 (1998) ("[S]exual harassment under Title VII presupposes intentional conduct."); University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338, 368 (2013) ("Retaliation is, by definition,

14

an intentional act.  It is a form of discrimination because the complainant is being subject to differential treatment.  Moreover, retaliation is discrimination on the basis of sex because it is an intentional response to the nature of the complaint: an allegation of sex discrimination.") (quotation marks omitted).  Thus, even if defendant Kolb's alleged actions could have given rise to an intentional tort, they cannot support liability predicated on negligence.  Weigle, 139 F. Supp. 3d at 780 (citing Brown v. J.C. Penney Corp., 521 F. App'x 922, 924 (11th Cir. 2013) (per curium)).

The plaintiffs, therefore, have not alleged the required elements to sustain Counts I and II.  Moreover, because the negligence claim against defendant OCBOE alleged in Counts I and II are wholly dependent upon the unviable negligence claim against defendant Kolb, the plaintiffs' negligence claims against defendant OCBOE cannot proceed.  Specifically, because the Court does not find that the plaintiffs asserted a claim that defendant Kolb was negligent, this Court cannot find that defendants Miller and Jones were negligent.  And since the Court does not find that defendants Miller and Jones were negligent, this Court cannot find that defendant OCBOE was negligent.  Accordingly, defendant OCBOE's motion for judgment on the pleadings is appropriate as to Counts I and II.

2. Count V is dismissed as to defendant OCBOE.

In the plaintiffs' fifth cause of action, the plaintiffs contend that defendant OCBOE was deliberately indifferent to defendant Kolb's sexual harassment. ECF No. 1-2 at 18. The plaintiffs state that defendant Kolb's actions were severe, pervasive, and objectively offensive that it deprived the plaintiffs of access to educational opportunities or benefits provided by the school. Id. The plaintiffs further allege that defendant OCBOE created and/or subjected the plaintiffs to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), because: (1) the plaintiffs are members of a protected class; (2) they were subjected to sex-based sexual harassment; and (3) they were subjected to a hostile educational environment created by defendant OCBOE's lack of policies and procedures and failure to properly investigate and/or address repeated episodes of sexual harassment. Id. The plaintiffs maintain that defendant OCBOE had actual knowledge of the sex-based harassment that it created by its alleged failure to investigate and discipline defendant Kolb in a timely manner. Id. Moreover, the plaintiffs claim that defendant OCBOE engaged in a pattern and practice of behavior designed to discourage and dissuade victims of sexual harassment from seeking protection and having full investigation of the alleged harassment. Id. at 19. Lastly, plaintiffs allege that as a direct and

16

proximate result of defendant OCBOE's deliberate indifference, they have suffered various injuries.  Id.  In the plaintiffs' response in opposition to the defendants' motions for judgment on the pleadings, the plaintiffs list various cases that have found that a plaintiff has met the required burden of proof to sufficiently allege that certain actions were "severe or pervasive."  ECF No. 40 at 10-13.  The plaintiffs then refer to their complaint where they allege that: (1) no investigation was conducted; (2) no action was taken against defendant Kolb; (3) harassment was persistent and severe; (4) defendant OCBOE failed to do an investigation; (5) a plaintiff was moved after her report; (6) representatives of defendant OCBOE were openly dismissive of plaintiff Ammirante's complaints; (7) after an "investigation," defendant Kolb was given a summer school principal job; and (8) defendant OCBOE failed to take remedial measures or offer Title IX paperwork.  Id. at 13-14.

In its reply brief, defendant OCBOE states that Title IX actions against institutions are not sustainable where final judgments have held that the institution's employee did not commit the underlying sex discrimination alleged.  ECF No. 38 at 5 (citing Klemencic v. Ohio State Univ., 263 F.3d 504, 511 (6th Cir. 2001)).

This Court agrees with defendant OCBOE that it cannot be held liable under Title IX based on the plaintiffs' theory of liability. As a matter of law, the plaintiffs were not subjected to the underlying sex discrimination alleged.  In order to sufficiently

allege a claim pursuant to Title IX on the basis of sexual harassment, the plaintiffs must show that: (1) defendant OCBOE receives federal funds; (2) the plaintiffs were subjected to harassment based on their sex; (3) the harassment was sufficiently severe or pervasive to create a hostile or abusive environment in an educational program or activity; and (4) there is a basis for imputing liability to the institution. <u>Jennings v. University of North Carolina</u>, 482 F.3d 686, 695 (4th Cir. 2007). Defendant OCBOE can be held liable for a Title IX violation only if "an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination . . . and fails to adequately to respond" or displays "deliberate indifference" to discrimination. <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 290 (1998).

Here, the plaintiffs' allegations of sexual harassment were based on defendant Kolb's conduct. Consistent with this Court's prior opinion (ECF No. 33), it is doubtful whether the plaintiffs have sufficiently alleged the second essential element of their Title IX claim, and the plaintiffs have failed to sufficiently allege the third essential element of their Title IX claim.[4]

---

[4]This Court will not go into detail as to why it is doubtful that the plaintiffs have sufficiently alleged the second element, but rather, the focus of this opinion is why the plaintiffs have failed to sufficiently allege the third element. The parties should see this Court's prior memorandum opinion and order (ECF No. 33) for a more detailed discussion regarding the second element.

Moreover, although the plaintiffs state "the critical question is not whether the Court found that the allegations in the Complaint were not severe and pervasive," the plaintiffs' response to the defendants' motion for judgment on the pleadings cites various cases as to whether certain conduct was severe or pervasive under Title VII. To the extent the plaintiffs seek this Court to revisit its prior decision (ECF No. 33), such a request is denied. Regardless, this Court will proceed to distinguish the cases cited in the plaintiffs' response in opposition to the defendants' motions for judgment on the pleadings that relate to the "severe or pervasive" element.[5] In doing so, this Court will not restate what has been already addressed in the memorandum opinion and order granting defendant Kolb's motion to dismiss (ECF No. 33).

Moreover, in distinguishing the cases that are cited by the plaintiffs in their response to the defendants' motions for judgment on the pleadings, this Court is not simply distinguishing

---

[5]This Court notes that some of the cases cited by the plaintiffs pertain to issues surrounding a court's decision to either grant or deny summary judgment. However, as previously noted in the "Applicable Law" section, in assessing the defendants' motions for judgment on the pleadings, this Court applies the standard for a Rule 12(b)(6) motion. A Rule 12(b)(6) motion must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. For purposes of deciding the defendants' motions for judgment on the pleadings, this Court construes the complaint in the light most favorable to the plaintiffs and inquires as to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a).

those cases to demonstrate that the behavior in those cases are considerably more offensive than that shown here. Rather, as stated in this Court's prior opinion (ECF No. 33), the case law serves as guidance where certain conduct would satisfy a plaintiff's burden on the "severe or pervasive" element. See ECF No. 33 at 15. This Court does not limit the applicable analysis only to instances where certain precise behaviors are alleged to have occurred. See id. The main question is whether as a matter of law, even when accepting all well-pled facts contained as true, the plaintiffs' allegations constitute a statement of claims under Federal Rule of Civil Procedure 8(a). 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998); see ECF No. 33 at 7. Here, without considering "legal conclusions, elements of [the] cause of action, and bare assertions devoid of further factual enhancement," the plaintiffs have not alleged sufficient facts to state a claim under Title IX that is plausible on its face. Nemet, 591 F.3d at 255.

The plaintiffs first cite Parker v. Reema Consulting Services, Inc., 916 F.3d 297, 300 (4th Cir. 2019). In that case, the central question presented was "whether a false rumor that a female employee slept with her male boss to obtain a promotion can ever give rise to her employer's liability under Title VII for discrimination 'because of sex.'" Id. Prior to appeal, the district court dismissed the plaintiff's complaint partly because

the harassment that the plaintiff alleged in the complaint was not sufficiently severe or pervasive to create a hostile work environment. Id. at 304. Specifically, the district court noted that "the rumor circulated for a few weeks and involved only a few slights." Id. (quotation marks omitted)

When this Court determined that defendant Kolb's actions were not "severe or pervasive," this Court viewed all the facts in the light most favorable to the plaintiffs and assumed all facts to be true. This Court considered the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably intere[d] with [the] employee[s'] work performance" in order to determine whether the plaintiffs have alleged enough facts to state a claim for relief. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). Unlike the district court in Parker, this Court did not largely focus on the temporal nature of the alleged harassment, or on any one particular fact, but considered the totality of the facts presented, assuming all facts to be true, in reaching its conclusion. See ECF No. 33 at 15-20.

The plaintiffs next cite Hernandez v. Fairfax County, 719 F. App'x 184, 185 (4th Cir. 2018). In remanding the district court's decision to enter summary judgment in favor of the defendant, the United States Court of Appeals for the Fourth Circuit found that there are genuine issues of material fact with respect to the

plaintiff's hostile work environment and retaliation claims under Title VII. Id. Even when construing the facts presented in the complaint in the light most favorable to the plaintiffs, the facts presented in Hernandez are distinguishable from the facts presented in this civil action, and support this Court's determination that the plaintiffs have failed to allege sufficient facts to meet the "severe or pervasive" standard. In Hernandez, "[i]n less than one year, [the station captain at the fire department] physically invaded [the plaintiff's] personal space on numerous occasions and made sexually suggestive comments to her. [The plaintiff] also informed various colleagues that he suspected that [the plaintiff and another] were engaged in an inappropriate sexual relationship. [The station captain] repeated his offensive actions despite the fact that [the plaintiff] repeatedly asked him to stop this conduct." Id. at 187-88. Moreover, the Fourth Circuit "importantly" noted "evidence of the extent to which [the plaintiff] knew that [the station captain] was continuing to monitor her movements and activities. [The plaintiff] was aware before she transferred to another station that [the station captain] started tracking what [she] was doing at the station, who [she] was talking to, how [she] was doing certain things, who [she] was giving hugs to." Id. (internal quotation marks omitted). Even after the plaintiff transferred to a different station, the station captain allegedly "continued to monitor her and knew when she was

working.  The record additionally showed that [the station captain] compiled multiple binders with information he had collected about [the plaintiff]."  Id.

The plaintiffs also cited Mosby-Grant v. City of Hagerston, 630 F.3d 326, 328 (4th Cir. 2010).  In reviewing a district court's grant of the defendant city's motion for summary judgment, the Fourth Circuit found that the plaintiff presented enough evidence for a reasonable jury to conclude that she was exposed to a hostile work environment because of her sex.  Id. at 333.  In that case, "[s]exist comments were pervasive . . . and were frequently made to [the plaintiff] or in her presence."  Id. at 335.  Specifically, "she heard her fellow recruits brazenly and repeatedly describe a sexual encounter with a sixteen year-old girl . . .  She also heard recruits and instructors make dozens of references to women as 'bitches,' 'crazy,' 'white trash,' 'ghetto,' and 'prostitutes,' was called a 'bitch' herself by an instructor, and was consistently subjected to selective taunting."  Id.  Moreover, the general work atmosphere, which may serve as additional evidence in a hostile work environment claim, was discriminatory.  Id.  "[T]he recruits' use of racially charged terms like 'honky,' 'cracker,' and 'fucking Mexicans'" was also found to be additional evidence that may lead a jury to reasonably conclude that a discriminatory atmosphere was pervasive at the subject Academy.  Id.

Unlike the facts presented in that case, the plaintiffs'
allegations here did not rise to a level of "severe or pervasive."
<u>See</u> ECF No. 33 at 15-20 for a detailed review.  Moreover, this
Court notes that in <u>Mosby-Grant</u>, the Fourth Circuit did not find
that the plaintiff presented sufficient evidence to proceed on her
race-based harassment claim despite evidence of: (1) an "incident
wherein [the plaintiff] overheard racist comments,[6] the offending
recruit immediately apologized, and explained that he and the
biracial recruit had been joking with one another[,]" and (2)
"another recruit [] openly diparage[d] Mexicans . . . two times in
five months."  <u>Id.</u> at 336-37.  Citing <u>Hartsell v. Duplex Products</u>,
123 F.3d 766, 773 (4th Cir. 1997), the Court held that the evidence
of the pervasiveness or severity of racial animus at the Academy
was too isolated and too minimal.  <u>Id.</u> at 337.  "[S]imple teasing,
offhand comments, and isolated incidents (unless extremely serious)
will not amount to discriminatory changes in the terms and
conditions of employment."  <u>Faragher v. City of Boca Raton</u>, 525
U.S. 775, 788 (1998) (citation and internal quotation marks
omitted).

The plaintiffs next cite <u>Jennings v. University of North
Carolina</u>, 482 F.3d 686, 691 (4th Cir. 2007).  In that case, the

---

[6]The Fourth Circuit indicated that the plaintiff overheard a
white male recruit tell a biracial recruit, "[w]here I'm from,
people like you are strung up from a flagpole."  <u>Mosby-Grant</u>, 630
F.3d at 329.

plaintiff alleged that her coach "persistently and openly pried into and discussed the sex lives of his players and made sexually charged comments." Id. In that case, the Fourth Circuit emphasized how the coach "was not just any college coach." Id. at 698. Rather, this coach had "tremendous power and influence over a player's opportunity for achievement in the soccer world, both at [the subject University] and beyond." Id. Moreover, the coach "was a forty-five-year-old man probing into and commenting about the sexual activities of young female, some of whom, like [the plaintiff], were as young as seventeen." Id. In that case: (1) the coach allegedly asked the plaintiff "[w]ho [she was] fucking] . . . in a dark hotel room, knee-to-knee, bed not made, sitting at one of those tiny tables[;]" (2) the plaintiff witnessed the coach's persistent focus on the sex lives of other players; (3) the plaintiff observed the coach's sex-based humiliation of several teammates; (4) the plaintiff heard the coach's demeaning comments where the coach "openly accused at least three players of being promiscuous, asking them degrading questions such as, 'Is there a guy you haven't fucked yet?'[;]" (5) the coach "turned news about visits by boyfriends into speculation about rampant sex[,]" asking "one player whether she was going to have a 'shag fest' when her boyfriend visited, and whether she was 'going to fuck him and leave him.'[;]" (6) the coach asked one player about the size of her boyfriend's genitalia; (7) the coach mocked a lesbian player and

asked her why she did not like men; (8) the plaintiff overheard the coach express fantasies about wanting to have group sex with his Asian players and about his interest in watching one player have sexual intercourse; (9) the coach engaged in overt displays of affection, telling players they had "nice rack[s]" or "nice legs[;]" and (10) the coach inappropriately touched the players. Id. This conduct was stated to "permeate[] team settings . . . occurring frequently, often during team warm-up time, on a typical Monday afternoon . . . or any time the team was together." Id.

Again, unlike the facts presented in Jennings, the plaintiffs' allegations here do not rise to a level of "severe or pervasive." See ECF No. 33 at 15-20 for a detailed review. More specifically, although no particular fact is dispositive, there are various facts that were presented in Jennings that are not alleged in this civil action. First, defendant Kolb is not alleged to have the same sort of power that the coach in Jennings had. Second, the plaintiffs do not allege facts that suggest a vast age difference that existed between the coach and his players in Jennings. Third, dissimilar to Jennings, where the harassing conduct occurred "any time the team was together," the conduct alleged in the plaintiffs' complaint does not reach the level in which "a reasonable trier of fact could conclude 'that the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate[.]'" Walker v. Mod-U-Kraf Homes, LLC, 775 F.3d 202, 209

(4th Cir. 2014) (citing <u>EEOC v. Cent. Wholesalers, Inc.</u>, 573 F.3d 167, 176 (4th Cir. 2009)); <u>see also</u> ECF No. 33 at 16-17.

Next, the plaintiffs cite <u>Smith v. First Union Nat. Bank</u>, 202 F.3d 234, 238 (4th Cir. 2000). In that case, the Fourth Circuit found that the district court incorrectly resolved whether the conduct at issue was sufficiently severe or pervasive. <u>Id.</u> at 243. In that case, the district court did not recognize that a woman's work environment can be hostile even without sexual advances or propositions. <u>Id.</u> at 242. Specifically, the Fourth Circuit noted that: (1) the plaintiff was subject to repeated remarks because she was a female on a regular basis, "at least once a month[;]" (2) the plaintiff was physically threatened; (3) received angry late-night phone calls; and (4) the employee who allegedly sexually harassed the plaintiff exhibited a paranoia that females "were out to get him." <u>Id.</u> at 242-243 (quotation marks omitted).

Again, unlike the facts presented in <u>Smith</u>, the plaintiffs' allegations here do not rise to a level of "severe or pervasive." <u>See</u> ECF No. 33 at 15-20 for a detailed review. The facts presented in <u>Smith</u> contrast significantly to the facts presented in this case due to the lack of physically threatening remarks and conduct, and regularity of such conduct. Again, in coming to its determination that defendant Kolb's alleged harassment was not "severe or pervasive," this Court assumed all facts in the plaintiffs' complaint are true and considered the full range of defendant

Kolb's conduct, ultimately finding that the plaintiffs have not sufficiently alleged to state a claim for relief.

Moreover, the plaintiffs cite <u>Hall v. Gus Const. Co., Inc.</u>, 842 F.2d 1010, 1015 (8th Cir. 1988). In reviewing a district court's finding that a Title VII plaintiff was subjected to sexual harassment, the Eighth Circuit found that the plaintiffs were subject to a "plethora of offensive incidents . . . no less compelling than in other cases finding a hostile and abusive environment." <u>Id.</u> Specifically, the Court found evidence that all the plaintiffs were subject to "systematic[]" sexual insults throughout their employment. Although not dispositive, the plaintiffs here have not made such allegations in their complaint.

The plaintiffs next cite <u>Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.</u>, 526 U.S. 629 (1999), where the Supreme Court of the United States found that the Eleventh Circuit erred in dismissing the petitioner's complaint. <u>Id.</u> at 653. In that case, however, the petitioners alleged "repeated acts of sexual harassment . . . over a 5-month period." <u>Id.</u> Specifically, there were allegations of verbal harassment and numerous acts of objectively offensive touching. <u>Id.</u> Indeed, the student who allegedly sexually harassed the plaintiff ultimately pleaded guilty to criminal sexual misconduct. <u>Id.</u> Unlike the facts in <u>Davis</u>, here, the plaintiffs do not allege conduct that would be considered sufficiently repetitious over a period of time. Moreover, unlike

<u>Davis</u>, the plaintiffs do not sufficiently allege enough facts of objectively offensive touching or verbal harassment.  As stated in this Court's prior opinion, incidents that are questionably severe, and are more offensive than physically threatening or humiliating do not satisfy the objective analysis required of the "severe or pervasive" element of a plaintiff's prima facie case.  <u>See</u> ECF No. 33 at 17 (citing <u>Green v. Caldera</u>, 19 F. App'x 79, 80 (4th Cir. 2001)).

Lastly, the plaintiffs cite <u>Crandell v. New York College of Osteopathic Medicine</u>, 87 F. Supp. 2d 304 (S.D. N.Y 2000), where a student brought a Title IX action against a medical school and its parent institution.  In that case, the plaintiff alleged that one professor: (1) asked her out on a date several times over the course of the semester; (2) told her she was pretty and that he wanted to end his relationship with his fiancé in order to date her; (3) appeared at her apartment with another professor who dated her roommate; and (4) entered her bedroom uninvited and kissed her against her will.  <u>Id.</u> at 307.  Another professor allegedly made several comments during the semester that had sexual overtones. <u>Id.</u> at 308.  Moreover, a faculty member allegedly: (1) "pressed his erect penis against plaintiff's hand, which was gripping the side of the table[,]" continuing to press himself against her even after she moved her hand away and (2) told the plaintiff that she was the most beautiful out of all of his patients.  <u>Id.</u>  The plaintiff also

alleged that a radiologist during her internship: (1) asked her out on dates more than ten times; (2) told her that he made reservations at a dance studio for the two of them; and (3) sometimes physically blocked her way in the hall in order to force her to talk to him.  Id. at 311.  During her internship, the plaintiff allegedly continued to be subjected to sexual comments and behavior from other doctors that included physical touching, with one doctor removing his clothes in front of her.  Id.  Another doctor allegedly told her that he could prevent her from obtaining a residency program.  Id.

Like the other cases the plaintiffs have cited, this case can be distinguished from the case at hand for numerous reasons. Unlike the facts in Crandall, the plaintiffs were not subject to the same sort of allegedly extensive verbal and physical harassment over a period of time.  Indeed, Crandell and all the other cases cited by the plaintiffs further provide support for the Court's initial conclusion that the facts alleged in the complaint, even when assumed as true and viewed in light most favorable to the plaintiffs, are insufficient to meet the "severe or pervasive" standard.

Accordingly, for the reasons stated above, the plaintiffs have failed to sufficiently allege the third essential element of their Title IX claim.  Defendant OCBOE's motion for judgment on the pleadings is granted as to Count V as well as to Counts I and II.

V. <u>Conclusion</u>

For the reasons set forth above, the motion for judgment on the pleadings of defendants Kimberly S. Miller and Rick Jones (ECF No. 35) is hereby GRANTED and the motion for judgment on the pleadings of defendant Ohio County Board of Education (ECF No. 37) is hereby GRANTED. Lastly, the parties' joint motion for an extension of time to file expert witness information (ECF No. 43) is DENIED AS MOOT.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    October 18, 2019


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE